IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, | § | |
| Plaintiff, | § | |
| v. | § | |
| HOMEBRIDGE FINANCIAL SERVICES, INC. f/k/a REAL ESTATE MORTGAGE NETWORK; FEDERAL NATIONAL MORTGAGE ASSOCIATION, Individually and as Trustee for FANNIE MAE REMIC TRUST 2008-81; BRANCH BANKING & TRUST COMPANY; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | § | CIVIL ACTION NO. H-16-0748 |
| Defendants. | § | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION and BRANCH BANKING & TRUST COMPANY, | § | |
| Counter-Plaintiffs, | § | |
| v. | § | |
| DAVID JOHNSON, | § | |
| Counter-Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brought this action against defendants HomeBridge Financial Services, Inc., formerly known as Real Estate Mortgage Network, Inc. ("HomeBridge" or "REMNI");[1] Federal National Mortgage

---

[1]The parties refer throughout their filings to "Real Estate
(continued...)

Association ("Fannie Mae"), individually and as Trustee for Fannie Mae REMIC Trust 2008-81; Branch Banking & Trust Company ("BB&T"); and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") in the 155th Judicial District Court for Austin County, Texas. Defendants Fannie Mae, BB&T, and MERS removed the action to this court and defendants Fannie Mae and BB&T counterclaimed for judicial foreclosure.[2] Pending before the court is Defendants' Amended Motion for Summary Judgment ("MSJ") (Docket Entry No. 52). For the reasons explained below, the motion will be granted.

I. **Factual Background**

In August of 2008 plaintiff David Johnson obtained a home equity loan secured by his principal residence (the "Property").[3]

---

[1](...continued)
Mortgage Network, Inc." Although HomeBridge Financial Services, Inc. is the proper party to this action (see Amendment to Registration, Exhibit B to Notice of Removal, Docket Entry No. 1-1, pp. 28-29), the court will refer to "REMNI" in regards to the original transaction to avoid confusion and for consistency with the filings and original loan documents.

[2]Amended Counterclaim of Federal National Mortgage Association and Branch Banking and Trust Company ("Amended Counterclaim"), Exhibit A to Motion for Leave to File Amended Counterclaim, Docket Entry No. 30-1.

[3]Plaintiff's Amended Petition, Exhibit A to Motion for Leave to File Amended Claim, Docket Entry No. 34-1, p. 4 ¶ 17; Defendants' MSJ, Docket Entry No. 52, p. 3 ¶ 6.

Johnson executed a $273,000 Texas Home Equity Note (the "Note")[4] and Texas Home Equity Security Instrument (the "Security Instrument")[5] (together "the Loan Agreement") in favor of REMNI.[6] Johnson's loan was assigned to Fannie Mae in October of 2008 and has since been serviced by BB&T.[7] Johnson defaulted on the loan and BB&T sent him a Notice of Default in May of 2014.[8] Fannie Mae, through its counsel, then sent Johnson a Notice of Acceleration on January 14, 2015.[9] Johnson has not made any payments on the loan since receiving the Notice of Default.[10] Johnson alleges causes of action for (1) quiet title, (2) violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"),[11] and (3-5) fraudulent court record and fraudulent claims against real

---

[4]Exhibit A-1 to Defendants' MSJ, Docket Entry No. 52-1, pp. 8-12.

[5]Exhibit A-2 to Defendants' MSJ, Docket Entry No. 52-1, pp. 14-36.

[6]Note, p. 8; Security Instrument, pp. 14-15.

[7]Declaration of Patrick Carper, Exhibit A to Defendants' MSJ, Docket Entry No. 52-1, pp. 4-5, ¶ 5.

[8]Id. at 5, ¶ 7; see also Notice of Default, Exhibit A-3 to Defendants' MSJ, Docket Entry No. 52-1, pp. 38-40.

[9]Carper Declaration, Docket Entry No. 52-1, p. 5, ¶ 8; see also Notice of Acceleration of Loan Maturity, Exhibit A-4 to Defendants' MSJ, Docket Entry No. 52-1, pp. 42-44.

[10]Carper Declaration, Docket Entry No. 52-1, p. 5, ¶ 8.

[11]Tex. Bus. & Com. Code §§ 17.41-17.63.

property.[12] Defendants Fannie Mae, BB&T, and MERS have moved for summary judgment on all of Johnson's claims and Fannie Mae and BB&T (together, "Counter-Plaintiffs") have moved for summary judgment on their counterclaim for judicial foreclosure.[13]

## II. Defendants' Motion for Summary Judgment

### A. Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet

---

[12]Plaintiff's Amended Petition, Docket Entry No. 34-1.

[13]Amended Counterclaim, Docket Entry No. 30-1.

this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

B. Johnson's Claims

Because Johnson is proceeding pro se, the court construes his pleadings liberally. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citations omitted) (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976))).

1. <u>Quiet Title</u>

Johnson seeks "quiet title" to the Property. A suit to remove cloud or to quiet title accords an equitable remedy. <u>Katz v. Rodriguez</u>, 563 S.W.2d 627, 629 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). It exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." <u>Essex Crane Rental Corp. v. Carter</u>, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citations omitted); <u>Hahn v. Love</u>, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief--that is, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove. <u>Essex Crane</u>, 371 S.W.3d at 387-88; <u>Hahn</u>, 321 S.W.3d at 531. The plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. <u>Vernon v. Perrien</u>, 390 S.W.3d 47, 61-62 (Tex. App.—El Paso 2012, no pet.) (citation omitted).

As far as the court can tell from the Amended Petition, Johnson's primary basis for asserting that Defendants' claim on his title is invalid or unenforceable is that the entire loan transaction is "null and void" because the original lender failed to disclose the "real party" or "real terms" of the transaction by

-6-

failing to disclose its intent to sell his loan.[14] Johnson had notice that the loan may be sold, however, because the Security Instrument explicitly states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."[15] Johnson cites generally to the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and "SEC rules,"[16] but assuming arguendo that there was a violation at the time of the original transaction, the court can find no basis under either authority to nullify the Loan Agreement.

Any TILA cause of action is also barred by the statute of limitations, as is apparent from the face of the Amended Petition. "The general statute of limitations for damages claims under the TILA is one year after the violation." Williams v. Countrywide Home Loans, Inc., 504 F. Supp. 2d 176, 186 (S.D. Tex. 2007) (citing 15 U.S.C. § 1640(e)), aff'd, 269 Fed. App'x 523 (5th Cir. 2008). "'The violation "occurs" when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations.'" Moor v. Travelers Ins. Co., 784 F.2d 632, 633 (5th Cir. 1986) (quoting In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984)). "The credit transaction is consummated at the moment 'a contractual relationship is created between [a creditor and a consumer].'" Williams, 504 F. Supp. 2d at 186 (quoting

---

[14]Amended Petition, Docket Entry No. 34-1, p. 5, ¶ 22.

[15]Security Instrument, Docket Entry No. 52-1, p. 23, Provision 19.

[16]Amended Petition, Docket Entry No. 34-1, p. 5, ¶¶ 22, 25.

Bourgeois v. Haynes Construction Co., 728 F.2d 719, 720 (5th Cir. 1984)). The credit transaction at issue was consummated on August 8, 2008. This suit was brought on February 26, 2016, more than seven years later. Plaintiff's TILA claims are therefore time-barred.

Johnson alleges no other factual basis for his quiet title claim. Johnson's remaining allegations are conclusory, unsupported, and raise no genuine issue of material fact as to the validity of Defendants' claim on title. Accordingly, summary judgment is appropriate on Johnson's quiet title claim.

2. Violation of the DTPA

Johnson argues that Defendants, specifically REMNI, violated § 17.46(b)(24)[17] of the DTPA by failing to inform him that it intended to sell his loan. "To prove a violation of the DTPA, [a] plaintiff[] must prove that: (1) [he is] a consumer, (2) victimized by false, misleading, or deceptive acts, failures to disclose, or an unconscionable course of action, (3) which was a

---

[17]Johnson's Amended Petition cites "section 17.46(b)(23)," but the cited portion of the statute deals with suit on a written contract brought in a county other than that in which the defendant resides or in which defendant signed the contract while § 17.46(b)(24) deals with "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Because only the latter matches Johnson's alleged facts, the court concludes that the reference to § 17.46(b)(23) is in error.

'producing cause' of damages." Streber v. Hunter, 221 F.3d 701, 727 (5th Cir. 2000) (citing Doe v. Boys Clubs of Greater Dallas, 907 S.W.2d 472, 478 (Tex. 1995)). Johnson had notice that his loan may be sold.[18] Moreover, as Counter-Plaintiffs argue, Johnson's DTPA claim fails because he is not a consumer.[19] "Generally, a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered neither a good nor a service." Fix v. Flagstar Bank, FSB, 242 S.W.3d 147, 160 (Tex. App.-Fort Worth 2007, pet. denied) (citing Riverside National Bank v. Lewis, 603 S.W.2d 169, 173-74 (Tex. 1980)). Because there is no evidence before the court that the transaction at issue was anything other than a pure loan, the court concludes that Johnson is not a "consumer" under the DTPA. Accordingly, summary judgment is appropriate as to Counter-Plaintiffs on Johnson's DTPA claim.[20]

### 3. Fraudulent Court Record and Fraudulent Claims Against Real Property

Johnson claims that Counter-Plaintiffs violated Chapter 12 of the Texas Civil Practice and Remedies Code by filing "knowingly fraudulent documents" and asserting fraudulent claims against real

---

[18] See Section II.B.1, supra.

[19] Defendants' MSJ, Docket Entry No. 52, p. 12-13.

[20] Although Johnson's DTPA claim against HomeBridge likely fails for the same reason, HomeBridge has neither joined the Counter-Plaintiffs in their Motion for Summary Judgment nor filed one of its own.

property in their initial foreclosure action.[21] Section 12.002(a) states that a person may not make, present, or use a document or other record with (1) knowledge that the document or record is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property, (2) intent that the document be given legal effect, and (3) intent to cause the plaintiff physical or financial injury or mental anguish. Tex. Civ. Prac. & Rem. Code § 12.002(a). Counter-Plaintiffs argue that Johnson has offered no evidence to support his fraudulent court record and fraudulent claims against real property claims. The court agrees.

Insofar as Johnson's claim relies on the invalidity of the assignment from REMNI to Counter-Plaintiffs, he lacks standing to challenge that assignment. See Reinagel v. Deutsche Bank Nat. Trust Co., 735 F.3d 220, 227-28 (5th Cir. 2013) (holding that a debtor lacks standing to challenge an assignment to a third party on a basis that renders the assignment merely voidable rather than void ab initio). Johnson offers no response to the Counter-Plaintiffs' evidence that BB&T holds the Note on behalf of Fannie Mae and no evidence to support his allegations.[22]

---

[21]Amended Petition, Docket Entry No. 34-1, pp. 7-9.

[22]Plaintiff's Response to the Defendants' Amended Motion for Summary Judgment (Docket Entry No. 53) largely repeats procedural arguments that the court has dealt with elsewhere. See Docket Entry Nos. 28, 39, 55 & 61. The remainder of Johnson's Response (continued...)

Accordingly, summary judgment is appropriate as to Johnson's claims of fraudulent court record and fraudulent claims against real property.

C. **Counter-Plaintiffs' Claim for Judicial Foreclosure**

Counter-Plaintiffs move for summary judgment on their counterclaim for judicial foreclosure.

> To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) plaintiff is in default under the note and security instrument; and (4) plaintiff received notice of default and acceleration.

Huston v. U.S. Bank National Association, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), aff'd, 583 F. App'x 306 (5th Cir. 2014) (citing Tex. Prop. Code § 51.002). In support of their motion, Counter-Plaintiffs offer loan documents and payment records along with the Declaration of Patrick Carper.[23] Johnson offers no evidence in response.

---

[22](...continued)
fails to address Counter-Plaintiffs' arguments.

[23]Exhibit A to Counter-Plaintiffs' MSJ, Docket Entry No. 52-1, pp. 2-6. Carper, a Vice President at BB&T bases the statements in his declaration on a review of BB&T's business records. Id. at 2-3. Johnson objects to Carper's Declaration as hearsay. Counter-Plaintiffs reply that the Fifth Circuit has held that a bank employee may gain personal knowledge by reviewing the organization's records, citing Dalton v. FDIC, 987 F.2d 1216, 1223 (5th Cir. 1993). The court agrees. Johnson's objection is denied.

1. The Debt

Neither party disputes that Johnson executed a Loan Agreement in the principal amount of $273,000.00. As of January 31, 2017, the amount required to satisfy the loan in full is $303,928.59.[24] This amount increases as interest and other charges continue to accrue.[25] Counter-Plaintiffs have presented sufficient evidence to establish this element as a matter of law.

2. The Debt is Secured by a Lien for a Home Equity Loan

Counter-Plaintiffs attached to their motion a copy of the security instrument, a lien created under Article 16, Section 50(a)(6) of the Texas Constitution, that was filed in the official Austin County real property records.[26] The Security Instrument creates a first lien mortgage on the home and authorizes foreclosure upon a default.[27] Johnson does not contest Counter-Plaintiffs' evidence, and Counter-Plaintiffs have met their summary-judgment burden as to this element.

3. Johnson's Default

Counter-Plaintiffs allege that Johnson defaulted under the terms of the Loan Agreement, and the Loan Agreement "is still

---

[24] Id. at 6, ¶ 9.

[25] Id.

[26] Security Instrument, Docket Entry No. 52-1, pp. 14-36.

[27] Id. at 25, Provision 22.

currently due for the July 1, 2014[,] payment and all subsequent monthly payments."[28] Johnson does not dispute Counter-Plaintiffs' allegation. Counter-Plaintiffs' evidence satisfies this element for a judgment of foreclosure.

### 4. Notice of Default and Acceleration

The Property Code requires the mortgage servicer to serve a debtor in default with written notice by certified mail stating that the note is in default and providing at least 20 days to cure before any notice of sale can be given. Tex. Prop. Code § 51.002(d). Fannie Mae, through its mortgage servicer BB&T, sent Johnson the requisite notices of default and acceleration via certified mail and Johnson has had more than 20 days to cure the default.[29] Counter-Plaintiffs have presented sufficient summary-judgment evidence to establish the last element of its counterclaim. The court will therefore grant Counter-Plaintiffs' request for an order and judgment of foreclosure against Johnson.

### D.  Counterclaim for Attorneys' Fees

Counter-Plaintiffs seek attorneys' fees in defending their rights under the Note and deed of trust, arguing that fees are

---

[28]Carper Declaration, Docket Entry No. 52-1, p. 6, ¶ 9.

[29]Notice of Default, Exhibit A-3 to Defendants' MSJ, Docket Entry No. 52-1, pp. 38-40; Notice of Acceleration of Loan Maturity, Exhibit A-4 to Defendants' MSJ, Docket Entry No. 52-1, pp. 42-44; Carper Declaration, Docket Entry No. 52-1, pp. 2-6.

recoverable as a further obligation on the subject Note and Security Instrument.[30] Johnson does not respond to this claim.

A party may recover attorneys' fees when such recovery is provided by statute or by contract. Christiana Trust v. Henderson, 181 F. Supp. 3d 375, 378 (S.D. Tex. 2016) (citing Graham v. Henegar, 640 F.2d 732, 736 (5th Cir.1981). Home equity loans are generally non-recourse and preclude contractual mortgagor liability. Huston, 988 F. Supp. 2d at 741 (citing Tex. Const. Art. XVI § 50(a)(6)(C)). But a mortgagee may recover its attorneys' fees, if the contract permits, against the mortgaged property from any surplus. Id.

Here, the Security Instrument, in Section 21 entitled "Acceleration, Remedies," states: "Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence."[31] This language makes clear that the Lender, in this case Fannie Mae, may recover its attorneys' fees incurred in defending its rights as a lienholder, insofar as the Texas Constitution permits. These fees may be recovered against the property upon a foreclosure sale.

---

[30]Defendants' MSJ, Docket Entry No. 52, p. 8, ¶ 17.

[31]Docket Entry No. 52-1, p. 25.

After reviewing Counter-Plaintiffs' evidence, the court finds that Counter-Plaintiffs may recover reasonable attorneys' fees (to be identified in a subsequent motion) under the security instrument.

### III. Conclusions and Order

For the reasons explained above, the court concludes that Johnson has failed to raise a genuine issue of material fact for trial with regard to any of his alleged claims for relief. The court therefore concludes that the Counter-Plaintiffs are entitled to judgment as a matter of law on all of Johnson's claims. Moreover, Counter-Plaintiffs have established that they are entitled to summary judgment on their counterclaim for judicial foreclosure. Accordingly, Defendants' Amended Motion for Summary Judgment (Docket Entry No. 52) is **GRANTED**.

It is further **ORDERED** that Counter-Plaintiffs are authorized to foreclose their lien on the property that secures the Note indebtedness, located at 1 East Nichols Street, Bellville, Texas 77418, and more fully described in Exhibit A to the Texas Home Equity Security Instrument, (Docket Entry No. 52-1, p. 29) pursuant to the Loan Agreement and the Texas Property Code § 51.002.

Finally, Counter-Plaintiffs' motion for attorneys' fees is **GRANTED**. In foreclosing its lien, Counter-Plaintiffs are entitled to apply the proceeds from the sale of the property against not only principal and accrued, unpaid interest, but also against the

reasonable attorneys' fees and costs that it has incurred, to be submitted in a separate filing **within 14 days of the entry of this Memorandum Opinion and Order** and supported by affidavit. Johnson will respond with any objections **within 14 days of Counter-Plaintiffs' filing**.

    **SIGNED** at Houston, Texas, on this 18th day of April, 2017.

                                           SIM LAKE
                        UNITED STATES DISTRICT JUDGE